THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

Abudu John Igein     *
  *Plaintiff*     *
v.     *
    *
**STATE FARM MUTUAL**   *
**AUTOMOBILE INSURANCE**   *
**COMPANY**     *
    *
    *
Amirah Shae Mann     *
    *
  *Defendants*     *

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 19 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

Case No: **1:20-CV-4287**

Jury Trial Demanded

## Table of Contents

Complaint for a Civil Case…………………………………………………3

Jurisdiction…………………………………………………………..…..3

Statement of Claim…………………………………………………………4

Discriminatory Actions of State Farm Defendant A

is Intentional, Malicious, and Willful………………………………..…..8

Discriminatory Actions of State Farm Defendant A

is Intentional, Malicious, and Willful………………………………..…...9

Intentional Character Assassination…………………………………..…10

State Farm Engaged in Conspiracy to Defraud

Plaintiff from Paying Claims…………………………………………...10

State Farm Action is Dishonest and amounts to Misconduct…………..11

State Farm Engages in Fraud……………………………………………..12

State Farm Bad Faith Settlement Actions………………………………..12

State Farm Uses Flight By Night Attorney

to Defraud Plaintiff…………………………………………………………13

State Firm Attorney Engages in Misconduct…………………….......13

State Farm continues to engage in Misconduct………………………..14

State Farm Action to Deny Claim is Discriminatory………………......15

State Farm Caught Lying About Buying a Judicial Election………………………16

Intentional interference, coercion or intimidation

based on National Origin………………………………………….…....17

Violation of Abudu John Igein Constitutional

Rights 5th Amendments……………………………………………...…19

Defamation of Character………………………..…………………...…21

Violation of HIPPAA Laws………………………………………......…23

Breach of Fiduciary Duty…………………………………………….…..24

Negligence……………………………………………………….......24

Relief………………………………………………………….…….25

Certification and Closing……………………………………….........26

Certificate of Service…………………………………………...…….28

Case Laws Cited………………………………………………………..30

Exhibits…………………………………………………………...…33

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| Abudu John Igein | * | |
| *Plaintiff* | * | |
| v. | * | |
| | * | |
| **STATE FARM MUTUAL** | * | |
| **AUTOMOBILE INSURANCE** | * | |
| **COMPANY** | * | |
| | * | |
| | * | |
| Amirah Shae Mann | * | Case No: |
| | * | |
| *Defendants* | * | Jury Trial Demanded |

## COMPLAINT FOR A CIVIL CASE

Comes now Abudu John Igein, Pro Se Plaintiff, herein files his complaint

against the following Defendants, State Farm ("Defendant A") and Amirah

Shae Mann ("Defendant B") respectively.

### I.

### Jurisdiction

Jurisdiction is proper under 28 U.S.C. 1331, a case arising under the United

States Constitution or federal laws or treaties. This is a Federal question

case; (1) Violation of 42 U.S. Code § 3617; (2) Violation 28 U.S. Code §

4101; and (3) Violation of 42 U.S. Code § 1320 d-6.

II.

The Amount in Controversy is more than $75,000---not counting interest and Court costs---because of the malicious, willful and intentional actions of the Defendants that have caused the Plaintiff severe emotional harm and damage.

III.

## Statement of Claim

1. On or about November 19, 2018, Plaintiff was the driver of a 2018 Toyota Corolla traveling westbound on Windy Hill Road, in lane four, approaching Cobb Parkway, Marietta, Cobb County, Georgia.

2. On or about the same DATE, Defendant B, Amirah Shae Mann was the driver of a 2014 Jeep Grand Cherokee, also traveling westbound on Windy Hill Road behind Plaintiff. Plaintiff stopped at the traffic light. Defendant Amirah Shae Mann's following too close and failure to stop as required by law caused the automobile collision.

3. As a result of Defendant's negligence, Plaintiff sustained injuries to his person and damage to his vehicle.

4. The Defendant's B failure to stop as required of a reasonable driver on a public highway caused the automobile accident on November 19, 2018.

5. The Defendant's B negligence was the proximate cause of the automobile accident (See accident report, exhibit A).

6. The Defendant B owed Plaintiff a duty to exercise reasonable care in the operation of her vehicle and the Defendant breached her duty as she failed to operate her vehicle in a save, reasonable and prudent manner.

7. As a result of Defendant's B negligence, Plaintiff incurred special and general damages. Defendant was cited with violating OCGA 40-6-49 (Following too close). Plaintiff sought monetary damages for his medical specials and general damages.

8. Ms. Amirah Shae Mann admitted fault but Defendant A, who owes fiduciary duty to Defendant B to settle all claims on her behalf refused to settle.

9. The Plaintiff sustained and claims $9,537 in damages, and no lost wages (See Medical Report, Exhibit B).

10. Defendant A, who is the insurer to Defendant B has chosen to violate Plaintiff Abudu John Igein Constitutional rights.

11. Plaintiff provided voluntary Interrogatory evidence and refused to answer medical questions, which are protected by law (Exhibit C).

12. However, Defendant A forced and placed Plaintiff Abudu John Igein under DURESS, and forced same into contentious Deposition.

13. Defendant A coerced Abudu John Igein, asking past medical questions.

14. Plaintiff Abudu John Igein did not remember many of the incidents, especially Criminal and Medical pasts.

15. Defendant A disparaged and defame Abudu John Igein, making the Plaintiff divulge information protected by law as confidential, but was revealed under DURESS.

16. Defendant A, who is the insurer to Defendant B has chosen to violate Plaintiff Abudu John Igein by engaging in Discriminatory actions based on his National Origin.

17. Defendant A, who is the insurer to Defendant B has chosen to violate Plaintiff Abudu John Igein by Defaming the former in a lower Court.

18. Defendant A, who is the insurer to Defendant B has chosen to violate Plaintiff Abudu John Igein by putting under duress when it knows that Defendant B is guilty and the proximate cause of the former injuries.

19. Evidence will show that Defendant A action is Predatory and targets Minorities who are not similarly situated as Defendant B (See Exhibit D).

20. Evidence will show that Defendant A action is Predatory, Malicious, Intentional, Willful and targets Minorities who are not similarly situated as Defendant B.

21. Since November 19, 2018, The Plaintiff has driven his vehicle for well over 224,000 miles (See Exhibit E).

22. Since November 19, 2018, Plaintiff has received Speeding tickets more than the average persons because of the nature of his driving work (See Exhibit F);

23. Since November 19, 2018, since working in Logistics Plaintiff has suffered more accidents than the ordinary citizen (See Exhibit G).

24. Defendant A actions to obtain confidential traffic tickets and medical records, when it KNEW Defendant B is guilty, and she is the proximate cause of the Plaintiff injuries, and refusing to settle but resulted to defame Plaintiff is Predatory, and its clear violation of the Plaintiff rights.

IV.

Discriminatory Actions of State Farm Defendant A is Intentional,

Malicious, and Willful.

25. State Farm denial of Abudu John Igein's claim is intentional, and

willful since Defendant B, Amirah Shae Mann is the cause of the

former accident, resulting in pain and suffering.

Other Discriminatory Acts by Defendant A:

26. State Farm led the auto insurance industry with its claim department redesign in 1979 for the purpose of increasing revenues by reducing or denying benefits. This was accomplished by abandoning insurance industry standards for good faith claim handling, and "redesigning" its claims procedures to require its adjusters to "delay, deny and defend" injury claims regardless of merit. This dishonest conduct has cheated consumers, including its own policyholders with first party underinsured motorist and uninsured motorist coverage, out of billions of dollars in policy benefits. These benefits were purchased by policyholders in good faith for protection and peace of mind should a claim arise (but unfortunately for those having a claim, their claim was predetermined to be adjusted for low value).

(http://www.chaneylaw.com/blog/2019/3/8/dishonest-claim-handling-methods-by-state-farm-allstate-farmers-usaa-and-other-insurers-harm-policy-holders-with-solutions-to-stop-the-insurance-abuse).

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## V.

Discriminatory Actions of State Farm Defendant A is Intentional, Malicious, and Willful.

27. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 26 above and further alleges:

28. State Farm denial of Abudu John Igein's claim is intentional, and willful since Defendant B, Amirah Shae is the cause of the former accident and pain and suffering. State Farm took these actions below to deny Abudu John Igein just compensation under the law is willful and intentional. See below.

29. State Farm implemented PP&R in 1979 with "the explicit objective of using the claims-adjustment process as a profit center," which "continues to function as an unlawful scheme to deny benefits owed to consumers by paying out less than fair value in order to meet preset, arbitrary payout targets designed to enhance corporate profits." The scope "applied equally to the handling of both third-party and first-party claims."[3]

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## VI.

## Intentional Character Assassination

30. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 29 above and further alleges:

31. Common tactics used by State Farm included "falsifying or withholding of evidence in claim files" and "to unjustly attack the character, reputation and credibility of a claimant and make notations to that effect in the claim file to create prejudice in the event the claim ever came before a jury."[4]

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## VII.

State Farm Conspires to Defraud Plaintiff from Paying Claims

32. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 31 above and further alleges:

33. Former State Farm employees testified they were subjected to "intolerable and recurrent pressure to reduce payouts below fair value" and at times "forced to commit dishonest acts and to knowingly underpay claims."[5] Ample evidence was presented that State Farm's policy was "deliberately crafted to prey on consumers who would be unlikely to defend themselves." Several former employees testified "they were trained to target the 'weakest of the herd' -- the elderly, the poor, and other consumers who are least knowledgeable about their rights and thus most vulnerable to trickery or deceit, or who have little

money and hence have no real alternative but to accept an inadequate offer to settle a claim at much less than fair value." [6]

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## VIII

State Farm Action is Dishonest and Amounts to Misconduct

34. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 33 above and further alleges:

35. The underlying Supreme Court of Utah's opinion provided more details about State Farm's dishonest and fraudulent wrongdoing. In *Campbell v. State Farm Mutual Automobile Insurance Company*,[9] rical baseline from 1922 to 1977ned to recuse, and the initial opinions ground to es given to the same interrogatory filed in the court reviewed considerable evidence to support the finding that "State Farm repeatedly and deliberately deceived and cheated its customers via the PP&R scheme...State Farm's fraudulent practices were consistently directed to persons - poor racial or ethnic minorities, women, and elderly individuals - who State Farm believed would be less likely to object or take legal action."[10]

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## IX.

### State Farm Engages in Fraud

36. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 35 above and further alleges:

37. The court recounted evidence that showed "State Farm engaged in a widespread pattern of fraud...that demonstrates that State Farm specifically calculated and planned to avoid full payment of claims, regardless of their validity. Thus the nature of State Farm's conduct supports the imposition of a higher than normal punitive damage award."[11]

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## X.

### State Farm Bad Faith Settlement Actions

38. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 37 above and further alleges:

39. Other wrongful acts of bad faith included "evidence that State Farm employed predictable experts...engaged in hardball litigation tactics, and discriminated on the basis of sex and race."[14] The court noted the $145 million punitive damages verdict was not unreasonable, given the need to sufficiently deter and punish State Farm.

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## XI.

State Farm Uses Flight By Night Attorney to Defraud Plaintiff

40. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 39 above and further alleges:

41. The employment of defense lawyers willing to violate the ethical rules of professional conduct was a key component in State Farm's enforcement of its mandated hardball claims methods of "Delay – Deny – Defend." This "fraudulent scheme" increased revenues by billions of dollars per year, so it easily justified State Farm paying millions of dollars per year to defense lawyers hired to defend insured defendants in injury lawsuits. State Farm's instructions to defense lawyers were outrageous, and were quoted by the Supreme Court of Utah, as follows:

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## XII.

State Firm Attorney Engages in Misconduct

42. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 41 above and further alleges:

43. There was also evidence that State Farm actually instructs its attorneys and claim superintendents to employ 'mad dog defense tactics' — using the company's large resources to 'wear out' opposing attorneys by prolonging litigation, making meritless objections, claiming false privileges, destroying documents, and abusing the law and motion process.[15]

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## XIII.

### State Farm continues to engage in Misconduct

44. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 43 above and further alleges:

45. Unfortunately, it appears the Utah Supreme Court and the dissenting justices of the United States Supreme Court were correct when they noted that future wrongdoing by giant corporations would not be deterred unless large punitive damages awards could be enforced. After the punitive damages verdict was reduced from $145 million to $9 million, State Farm's and other insurance companies' insurance abuse has continued to the detriment of policyholders in first party UIM and UM cases, and to injured plaintiffs and defendants in third party cases.

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## XIV

State Farm Action to Deny Claim is Discriminatory

46. Plaintiff, Abudu John Igein realleges and incorporates by reference all

those facts and allegations in paragraphs 1 through 45 above and

further alleges:

47. Policyholders and injury claimants are forced to file a lawsuit as the only option to a low valued settlement offer. A key component of the claim department "redesign" is using the civil justice system as the "Kill Box" for injury claimants unwilling to accept a low settlement offer. Sadly, the character assassination tactics and other violation of ethical rules by unscrupulous defense lawyers often defeat even the most meritorious of injury claims.

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## XV.

## **The Fruits of State Farm's Ill-gotten Gains**

48. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 47 above and further alleges:

49. The Utah Supreme Court noted State Farm's surplus increased from $2.65 billion to $25 billion, and its assets increased from $6.3 billion to $54.75 billion, in the period from just before PP&R was implemented in 1977 to 1995. This shows the great profitability of State Farm's

fraudulent scheme.[17] State Farm's web page has a company history stating it was founded in 1922. From inception in 1922 to 1977, in 55 years, State Farm's assets grew to $6.3 billion per the court's opinion, which averages $0.12 billion per year as a baseline. The court noted from 1978 to 1995, in 17 years during which PP&R was adopted, State Farm's assets grew to $54.75 billion, an increase of $48.45 billion, which averages $2.85 billion per year over 17 years. This is an average increase of 2,400 percent per year over the baseline, once State Farm stopped following insurance industry good faith claim handling rules in 1978. From 1995 to 2013 according to State Farm's online annual reports, State Farm's assets increased to $129.34 billion, an increase of $74.59 billion since 1995, which averages $4.14 billion per year over 18 years. This is an average of 3,400 percent increase per year over the historical baseline, and an increase of 1,200 percent per year over the 2,400 percent per year increase for the initial PP&R period up to 1995 that was mentioned in the court opinion. Dishonesty pays and pays well!

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## XVI.

### State Farm Caught Lying About Buying a Judicial Election

50. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 49 above and further alleges:

51. State Farm made the news for getting caught buying justice in Illinois. The insurer paid millions to a judge's campaign in order to get a billion-dollar verdict against it reversed. In 1999, State Farm lost a

$1,056,180,000 verdict for repairing insured vehicles with cheaper, aftermarket parts instead of OEM parts. State Farm appealed to the Supreme Court of Illinois. While this appeal was pending, the insurer campaigned for and donated money to a candidate in a race for the Supreme Court of Illinois, the very court that would decide State Farm's appeal. The candidate backed by State Farm ultimately won the election, which was the most expensive state Supreme Court race in U.S. history, with $9.3 million raised.

*See State Farm Mutual Automobile Insurance Company v. Campbell*

## XVII.

Intentional interference, coercion or intimidation based on National Origin

### Violation of 42 U.S. Code § 3617

52. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 51 above and further alleges:

### Definition.

53. [It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by section 3603, 3604, 3605, or 3606 of this title].

54. Plaintiff, Abudu John Igein alleges and incorporates by reference all those facts and allegations in paragraphs 1 through 53 above and further alleges:

55. Defendant A Knew and should have known that Abudu John Igein belongs to a protected class under the United States Constitution.

56. Defendant A Knew and should have known that Abudu John Igein is not similarly situated like other Americans but intentionally violated Abudu John Igein's rights NOT TO BE PLACED UNDER DURESS.

**57.** Defendant A Knew and should have known that its client Defendant B is guilty as charged, received a citation for her offense. But Defendant A intentionally, and Willfully makes an attempt to disparage, defame Plaintiff Abudu John Igein under oath, by coercion to divulge his Criminal record, traumatic records that have been repressed in his memory.

**58.** Defendant A Knew and should have known that Abudu John Igein speaks with a strong accent, and he is not a good candidate under oath. Defendant A chose to place Abudu John Igein under oath even knowing that its client is guilty WITHOUT DOUBT.

59. Defendant A Knew and should have known that continue denial and misplacement of guilt towards Abudu John Igein is against the law.

**60.** Defendant A Knew and should have known that continued denial and misplacement of guilt towards Abudu John Igein is Malicious, Willful and Intentional actions.

**61.** Defendant A have engaged in similar actions against those NOT SIMILARLY SITUATED like Abudu John Igein, discriminated based on Race and National Origin in settling Accident claims (Exhibit C).

## XIII.

### Violation of Abudu John Igein Constitutional Rights 5th Amendments

62. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 61 above and further alleges:

63. The constitution guarantees the rights to Due process (5th Amendment).

64. Abudu John Igein seeks medical help and an Attorney to mitigate his case against Defendant B as prescribed under the law.

65. Abudu John Igein has been truthful with his claim and injuries under the law.

66. Abudu John Igein sought medical help as prescribed under the law.

67. However, Defendant A intentionally undermined Plaintiff's presentation of medical costs. The medical costs in the amount of $10,000.

68. Defendant A decides to pay $4000. Defendant A violated the Plaintiff rights to equitable compensation under the law.

69. Defendant A action is not limited to Plaintiff Abudu John Igein.

70. Defendant A action is against Black people and those from different countries of African origins (See Exhibit A).

71. Defendant A action of Discrimination include underpaying for medical bills;

72. Settling cases for less than it's worth as compared to Whites;

73. Defendant uses the same INTERROGATORY to annoy, disparage, and defame those NOT SIMILARLY SITUATED like the Plaintiff in this matter.

74. Defendant A engages in **coercion** by asking questions during Deposition that had been originally deemed CONFIDENTIAL during written INTERROGATORY.

XIV.

## DEFAMATION OF CHARACTER

Violation 28 U.S. Code § 4101

75. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 74 above and further alleges:

76. Defendant A Knew and should have known that 1 in 3 African Americans have criminal records, decides to use these records against Plaintiffs to defame and lower their settlement amount (See Exhibit H).

77. Defendant A Knew and should have known that Abudu John Igein belongs to 1 in 3 Black people with records, and decides to use his record to defame, disparage and paint him in a different light even though its client is Guilty of the Accident charged (See Exhibit I).

78. Abudu John Igein developed repressed memory. Short-term memory loss. Difficulty remembering event as a result of traumatic prison event in Abudu John Igein. Defendant A Knew and should have known that Abudu John Igein's age of 58 at the time works against him, but dragged the Plaintiff into a Deposition although Defendant A

client is guilty of the offense charged. Abudu John Igein is traumatized of the actions of Defendant A (See Exhibit J).

79. Defendant A Knew and should have known about the positive events in Plaintiff life but proceeded to disparage, defame the Plaintiff. Defendant A knew and should have known that Abudu John Igein background is as follow:

80. Abudu John Igein earned a Bachelor's degree in June 1986 from Southern University in New Orleans, Louisiana.

81. Abudu John Igein earned his Master's and PhD ABD from Walden University, 2009 and 2012, respectively.

82. Abudu John Igein created Egg Head Writers LLC, Tax ID No: 82-4997022 (an **ESSENTIAL** medical delivery to Nursing Homes and Sickly people) and staffing company in 2018.

83. Abudu John Igein is the creator and owner of eggheadrecruiters.com, a subsidiary of Egg Head Writers LLC, Job Board like INDEED, engaging in staffing that connects Jobseekers with Employers all over the world.

84. Abudu John Igein is also the creator of African American and African Improvement, Movement, Society, acronym aaaims.org, a charity that helps Minorities all over the world.

85. Defendant A chose to neglect Abudu John Igein's achievements and accomplishments but rather chooses to intentionally defame the Plaintiff, as evidenced in the coercive DEPOSITION to the Superior Court.

## XV.

## VIOLATION OF HIPPAA LAWS

### Violation of 42 U.S. Code § 1320 d-6

86. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 85 above and further alleges:

87. Defendant A Knew and should have known that it engages in Intentional and Willful violation of Abudu John Igein's rights to keep his medical record Private and Confidential. Defendant A is in violation of HIPPAA laws for accessing Plaintiff medical record without his permission.

## XVI.

## BREACH OF FIDUCIARY DUTY

88. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 87 above and further alleges:

89. Defendant A owns Defendant B rights of fiduciary duty to settle damages caused by the latter. Defendant B proximate actions caused damages to Plaintiff's car and person. Defendant B becomes a party to this claim because Defendant A failed to fulfill its fiduciary Good Faith duties promised to Defendant B.

## XVII

## Negligence

*90. Definition:*

*Negligence is defined as the failure to use ordinary or reasonable care in a situation.* As a result of Defendant B proximate reckless actions, Defendant B is negligent.

91. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 90 above and further alleges:

24

92. As a result of the Discriminatory action and failure to settle in a timely manner, reneging on its DUTY to Defendant B, Defendant A, State Farm is guilty of Negligence.

93. Defendant A knew and should have known Defendant B is guilty as charged for reckless actions during an accident but continued to disparage, humiliate, defame, harass Plaintiff using his background record, medical records, to paint him in a different light as to gain financially from paying equitable settlement as prescribed by law.

## XVIII

### Relief

94. Plaintiff, Abudu John Igein realleges and incorporates by reference all those facts and allegations in paragraphs 1 through 93 above and further alleges:

95. As a result of Defendant's A, State Farm's proximate action of coercion, disparagement, defamation, attacks, Plaintiff Abudu John Igein suffered emotional harm, mental disturbance, mental suffering, mental anguish, and humiliation. Defendant State Farm actions resulted in Abudu John Igein to experience unpleasant emotional

reaction that is now causing the Plaintiff anxiety, high blood pressure, and sleepless nights.

96. WHEREFORE, Plaintiff Abudu John Igein claims $1,500,000 in Compensatory damage, for Defamation, Humiliation, Pain and Suffering;

97. To pay reasonable attorney's fees (If one is obtained) and costs.

98. Plaintiff Abudu John Igein demands Punitive Damage to be awarded by the Jury;

99. Plaintiff Abudu John Igein claims Injunctive Damage, Cease and Desist from the honorable Judge in this matter, against Defendant A.

## XVIII.

## Certification and Closing

100. Under Federal Rule of Civil Procedure II, by signing below, I certify to the best of my knowledge, information, and belief that this complaint, (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; 3) the factual contentions have evidentiary support or, if specifically so

identified, will likely have evidentiary support after reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted

Abudu John Igein
5051 Brown Leaf Court
Powder Springs GA 30127
404-947-9278

Dated: 10/19/2020

# CERTIFICATE OF SERVICE

I hereby served the defendants listed below a copy of my CIVIL COMPLAINT by Email, and/or Fax, and/or US Registered mail, with Return Receipt, to the Defendants' addresses.

| Defendant A | Defendant B |
|---|---|
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** | AMIRAH SHAE MANN <br> 2933 BONDS LAKE RD <br> CONYERS GA 30012 |
| Address <br> **ONE STATE FARM PLAZA, BLOOMINGTON, IL, 61710-0001, USA** | |
| **Registered Agent** <br> **Corporation Service Compamy** <br> **40 Technology Pkwy. South, #300,** <br> **Norcross, GA, 30092, USA** | |
| Sec of State Control Number: **J450478** | Defendant B Attorney |
| Email: lmayo@wachp.com | Lindsey M. Mayo |
| Phone #: 770-953-1710 | Georgia Bar No. 279513 |
| | 75 Circle Parkway #100 |
| | Atlanta GA 30339 |
| | 770-953-1710 |

| Complaint filed with | JOHN F. KING |
|---|---|
| THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA | GEORGIA INSURANCE AND SAFETY & FIRE COMMISSIONER 2 MARTIN LUTHER KING DR. WEST TOWER SUITE 704 ATLANTA GA 30334 |

| EEOC | NAACP |
|---|---|
| JOHN NWOSU & ASSOCIATES, INC. Johnbull Nwosu, ESQ. Lawyers Building 166 Anderson Street Suite 201 Marietta GA 30060 John.nwosulawfirm@gmail.com | Ben Crump 717 D Street N.W. Suite 310 Washington DC 20004 1-800-235-0444 |

Respectfully Submitted

Abudu John Igein
5051 Brown Leaf Court
Powder Springs GA 30127
404-947-9278

Dated: 10/19/2020

Case Laws Cited:

[1] 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

[2] Id. at 408 U.S. at 412.

[3] Id. 538 U.S. at 431.

[4] Id. 538 U.S. at 431.

[5] Id. 538 U.S. 431.

[6] Id. 538 U.S. at 433.

[7] Id. 539 U.S. at 436.

[8] Id. 538 U.S. at 436.

[9] 2001 UT 89, 65 P.3d 1134 (2001).

[10] Id. 2001 UT 89 at page 25.rical baseline from 1922 to
1977ned to recuse, and the initialnion.s s ground to es
given to the same interrogatory filed in th

[11] Id. 2001 UT 89 at page 30.

[12] Id. 2001 UT 89 at page 36

[13] Id. 2001 UT 89 at page 60.

[14] Id. 2001 UT 89 at page 70.

[15] Id. 2001 UT 89 at page 9.

[16] 2004 UT 34 (2004).

[17] Id. 2001 UT 89 at page 25.

[18] http://articles.chicagotribune.com/2011-09-15/news/chi-suit-state-farm-covered-up-donations-to-justice-who-voted-in-its-favor-20110915_1_state-farm-dick-luedke-recuse

[19] 2011 Ark. 19, 376 S.W.3d 414 (2011).

[20] Id. 2011 Ark. 19 at page 12.

[21] Id. 2011 Ark. 19 at page 13.

[22] Id. 2011 Ark. 19 at page 15.

[23] Goddard v. Farmers Insurance Company, 344 Ore. 232 (2008).

[24] Massey v. Farmers Insurance Group, 986 F.2d 1428 (10th Circuit, 1993).

[25] 2000 OK 59, 11 P.3d 190 (2000).

[26] Id. 2000 OK 59 at page 5.

[27] Id. 2000 OK 59 at page 6.

[28] Id. 2000 OK 59 at page 6.

[29] Id. 2000 OK 59 at page 9.

[30] Id. 2000 OK 59 at pages 11, 14.

[31] Id. 2000 OK 59 at page 14.

[32] 174 P.3d 970 (2008).

[33] 2011 Ark. 93 (2011).

[34] These include Uniform State Laws adopted in Arkansas:
the Uniform Trade Practices Act, Ark. Code. Ann. § 23-66-
201 et seq, and the Uniform Unfair Claims Settlement
Practices Act, codified as Rule 43 of the Rules and
Regulations of the Arkansas Insurance Department; and
appellate court opinions that establish binding legal
precedents that must be followed by insurance companies.
See also AMI Civ. 2426 (2016) and Arkansas Research Medical
Testing, LLC v. Osborne, 2011 Ark. 158 (2011)(a breach of
the implied covenant of good faith and fair dealing is
admissible evidence of a possible breach of a contract
between parties).

[35]
https://www.publicintegrity.org/2016/10/02/20020/drinks-
dinners-junkets-and-jobs-how-insurance-industry-courts-
state-commissioners - the Center for Public Integrity found
about half of state insurance commissioners came from the
insurance industry, that many have committed ethical and
criminal violations, accepted money to attend lavish
conferences and being wined and dined, have direct ties to
insurance companies, over half leaving their posts to
accept a job in the insurance industry, and have raised
more doubt with the public about honesty in government.

Exhibits

See Accident Report, Exhibit A

See Medical Report, Exhibit B

See Interrogatory Report, Exhibit C

See evident of Predatory and Malicious actions by Defendant A, Exhibit D

See Toyota Corolla Mileage 224,000 miles (See Exhibit E).

Driving Record Report See Exhibit F

See Accident Report Exhibit G

See Exhibit H: African American Criminal History Report

See Exhibit I: Plaintiff Criminal History report

See Exhibit J: Plaintiff traded his 2018 Toyota Corolla for Nissan Rouge 2020 and couldn't remember information on his credit report when asked by Nissan Finance Corporation. Question: What is name of the company you traded your 2012 Ford Focus to in 2018?

EXHIBIT A

| Agency Case Number 18111179 | Agency NCIC Number GA0330200 | GEORGIA MOTOR VEHICLE CRASH REPORT | County COBB | Date Rec. By GDOT |
|---|---|---|---|---|

| Estimated Crash | | Dispatch | | Arrival | | Vehicles | Total Number Of Injuries | Fatalities | Inside City Of: |
|---|---|---|---|---|---|---|---|---|---|
| Date 1/19/2018 | Time 17:45 | Date 11/19/2018 | Time 17:48 | Date 11/19/2018 | Time 17:52 | 2 | 0 | 0 | |

Road of Occurrence **WINDY HILL RD**  At Its Intersection With ____  ☐ Corrected Report

Not At Its Intersection But **100**  ☐ Miles ☒ Feet  ☐ 1 North ☐ 2 South  3 ☒ East ☐ 4 West  Of: **COBB PKWY**  ☐ Suppl. To Original

Latitude (Y) **+33.90318** 00.00000  Longitude (X) **-84.48651** -00.00000  ☐ Hit and Run?.

| Unit # 1 | ☒ Driver ☐ Ped ☐ Bike | LAST NAME MANN, | FIRST AMIRAH | MIDDLE SHAE | Unit # 2 | ☒ Driver ☐ Ped ☐ Bike | LAST NAME IGEIN, | FIRST ABUDU | MIDDLE JOHN |
|---|---|---|---|---|---|---|---|---|---|

| ☒ Susp At Fault | Address 2993 BONDS LAKE RD NW | | ☐ Susp At Fault | Address 2143 MACLAND RD SW | |
|---|---|---|---|---|---|

| City CONYERS | State GA | Zip 30012- | DOB 07/26/1995 | City MARIETTA | State GA | Zip 30064- | DOB 09/28/1960 |
|---|---|---|---|---|---|---|---|

| Driver's License No. 058662513 | Class C | State GA | Country US | Driver's License No. 055912191 | Class A | State GA | Country US |
|---|---|---|---|---|---|---|---|

| Insurance Co. State Farm Mutual | Policy No. 9563405D1511 | Telephone No. | Insurance Co. State Farm Mutual | Policy No. 9506571B2711 | Telephone No. (404) 947-9278 |
|---|---|---|---|---|---|

| Year 2014 | Make JEEP | Model GRAND CHEROK | Year 2018 | Make TOYT | Model COROLLA L LE |
|---|---|---|---|---|---|

| VIN 1C4RJEBG6EC134061 | Vehicle Color WHI | VIN 2T1BURHE5JC092053 | Vehicle Color GRY |
|---|---|---|---|

| Tag # JQ8679 | State GA | County COBB | Year 2019 | Tag # RMJ2655 | State GA | County COBB | Year 2019 |
|---|---|---|---|---|---|---|---|

| Trailer Tag # | State | County | Year | Trailer Tag # | State | County | Year |
|---|---|---|---|---|---|---|---|

| ☐ Same as Driver | Owner's Last Name | First | Middle | ☒ Same as Driver | Owner's Last Name IGEIN, | First ABUDU | Middle JOHN |
|---|---|---|---|---|---|---|---|

| Address | | | | Address 2143 MACLAND RD SW | | |
|---|---|---|---|---|---|---|

| City | State | Zip | City MARIETTA | State GA | Zip 30064- |
|---|---|---|---|---|---|

| Removed By. OWNER | ☐ Request ☐ List | Removed By OWNER | ☐ Request ☐ List |
|---|---|---|---|

| Alcohol Test 2 | Type | Results | Drug Test 2 | Type | Results | Alcohol Test 2 | Type | Results | Drug Test 2 | Type | Results |
|---|---|---|---|---|---|---|---|---|---|---|---|

| First Harmful Event: 11 | Most Harmful Event: 11 | Operator/Ped Cond: 1 | First Harmful Event: 11 | Most Harmful Event: 11 | Operator/Ped Cond: 1 |
|---|---|---|---|---|---|

| Operator Contributing Factors: 3 | Operator Contributing Factors: 1 |
|---|---|

| Vehicle Contributing Factors: 1 | Roadway Contributing Factors: | Vehicle Contributing Factors: | Roadway Contributing Factors: |
|---|---|---|---|

| Direction of Travel: 4 | Vehicle Maneuver: 5 | Non-Motor Maneuver: | Direction of Travel: 4 | Vehicle Maneuver: 4 | Non-Motor Maneuver: |
|---|---|---|---|---|---|

| Vehicle Class: 1 | Vehicle Type: 11 | Vision Obscured: 1 | Vehicle Class: 1 | Vehicle Type: 1 | Vision Obscured: 1 |
|---|---|---|---|---|---|

| Number of Occupants 1 | Area of Initial Contact: 12 | Damage to Veh: 2 | Number of Occupants 1 | Area of Initial Contact: 6 | Damage to Veh: 2 |
|---|---|---|---|---|---|

| Traffic-Way Flow: 2 | Road Comp: 2 | Road Character: 1 | Traffic-Way Flow: 2 | Road Comp: 2 | Road Character: 1 |
|---|---|---|---|---|---|

| Number of Lanes: 7 | Posted Speed: 35 | Work Zone: 0 | Number of Lanes: 7 | Posted Speed: 35 | Work Zone: 0 |
|---|---|---|---|---|---|

| Traffic Ctrl 7 | Device Inoperative? ☐ Yes ☒ No | Traffic Ctrl 7 | Device Inoperative? ☐ Yes ☒ No |
|---|---|---|---|

Citation Information:

| Citation # 3717985 | O.C.G.A. § 40-6-49 | Citation # | O.C.G.A. § |
|---|---|---|---|
| Citation # | O.C.G.A. § | Citation # | O.C.G.A. § |
| Citation # | O.C.G.A. § | Citation # | O.C.G.A. § |

**COMMERCIAL MOTOR VEHICLES ONLY**

| Carrier Name | Carrier Name |
|---|---|
| Address City State Zip | Address City State Zip |
| U.S. D.O.T. # | No. of Axles | G.V.W.R. | U.S. D.O.T. # | No. of Axles | G.V.W.R. |

| Cargo Body Type | Vehicle Config. | Interstate ☐ Intrastate ☐ | Fed. Reportable ☐ Yes ☐ No | Cargo Body Type | Vehicle Config. | Interstate ☐ Intrastate ☐ | Fed. Reportable ☐ Yes ☐ No |
|---|---|---|---|---|---|---|---|

| C.D.L.? ☐ Yes ☐ No | C.D.L. Suspended? ☐ Yes ☐ No | C.D.L.? ☐ Yes ☐ No | C.D.L. Suspended? ☐ Yes ☐ No |
|---|---|---|---|

| Vehicle Placarded? ☐ Yes ☐ No | Hazardous Materials? ☐ Yes ☐ No | Vehicle Placarded? ☐ Yes ☐ No | Hazardous Materials? ☐ Yes ☐ No |
|---|---|---|---|

| Haz Mat Released? ☐ Yes ☐ No | Haz Mat Released? ☐ Yes ☐ No |
|---|---|

If YES, Name or 4 Digit Number from Diamond or Box: ____  If YES, Name or 4 Digit Number from Diamond or Box: ____

1 Digit Number from Bottom of Diamond: ____  1 Digit Number from Bottom of Diamond: ____

☐ Ran Off Road ☐ Down Hill Runaway ☐ Cargo Loss or Shift ☐ Separation of Units  ☐ Ran Off Road ☐ Down Hill Runaway ☐ Cargo Loss or Shift ☐ Separation of Units

GDOT-523 (07/17)

## COLLISION FIELDS

| Manner of Collision: 3 | Location at Area of Impact: 1 | Weather: 2 | Surface Condition: 1 | Light Condition: 1 |
|---|---|---|---|---|

## NARRATIVE

Vehicle 1 rear-ended vehicle 2 westbound on Windy Hill Road in lane four, approaching Cobb Parkway.

Driver 1 phone# 404-960-6972
Driver 1 stated she was westbound on Windy Hill Road behind vehicle 2 and could not halt her vehicle in time. Driver 1 was not injured.

Driver 2 phone# 404-947-9278
Driver 2 stated he was stopped westbound on Windy Hill Road when he felt an impact from the rear. Driver 2 was not injured.

\* \* Continued \* \*

## DIAGRAM



Indicate North

## PROPERTY DAMAGE INFORMATION

| Damage Other Than Vehicle: | Owner: |
|---|---|

## WITNESS INFORMATION

| Name (Last, First) | Address | City | State | Zip Code | Telephone Number |
|---|---|---|---|---|---|
| | | | | | |

## OCCUPANT INFORMATION

| Name (Last, First): MANN, AMIRAH SHAE | | | | Address 2993 BONDS LAKE RD NW  CONYERS, GA, 30012- | | | | |
|---|---|---|---|---|---|---|---|---|
| Age: 25 | Sex: F | Unit #: 1 | Position: 1 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 2 | Injury: 0 | Taken for Treatment: 2 |
| Injured Taken To: | By: | | | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): IGEIN, ABUDU JOHN | | | | Address 2143 MACLAND RD SW  MARIETTA, GA, 30064- | | | | |
|---|---|---|---|---|---|---|---|---|
| Age: 60 | Sex: M | Unit #: 2 | Position: 1 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 2 | Injury: 0 | Taken for Treatment: 2 |
| Injured Taken To: | By: | | | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit #: | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | By: | | | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit #: | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | By: | | | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

## ADMINISTRATIVE

Photos Taken:  ☐ Yes  ☒ No   By:

Officer Note: If collision resulted in a fatality, please send prompt notification to the GDOT Crash Reporting Unit via either email at GeorgiaFARS@dot.ga.gov or Fax at (404) 635-2963.

| Report By: BESKEROV, E. | Agency: COBB COUNTY POLICE | Report Date: 11/19/2018 | Checked By: SHINHOLSTER, E. M. | Date Checked: 11/19/2018 |
|---|---|---|---|---|

DOT-523 (07/17)   *MAIL TO: Georgia Department of Transportation, CRASH REPORTING UNIT, 935 East Confederate Ave., Atlanta, GA 30316-2590*

**SUPPLEMENT**
**GEORGIA MOTOR VEHICLE CRASH REPORT**

| Agency Case Number: | Estimated Crash Date: | Officer Name: |
|---|---|---|
| 18111179 | 11/19/2018 | ALESKEROV, E. |

**NARRATIVE CONTINUED**

Due to my investigation at the scene, driver 1 was cited for following too closely.

\* \* E N D \* \*

**ADDITIONAL CITATION INFORMATION**

| Unit # ____: | | Unit # ____: | |
|---|---|---|---|
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ | Citation # _____ | O.C.G.A. § _____ |

**ADDITIONAL OCCUPANT INFORMATION**

| Name (Last, First): | | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | | By: | | | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): | | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | | By: | | | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): | | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | | By: | | | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): | | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | | By: | | | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |

| Name (Last, First): | | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Age: | Sex: | Unit # | Position: | Safety Eq: | Ejected: | Extricated: | Air Bag: | Injury: | Taken for Treatment: |
| Injured Taken To: | | By: | | | EMS Notified Time (Fatality Only): | EMS Arrival Time (Fatality Only): | | Hospital Arrival Time (Fatality Only): | |



ADDITIONAL or FULL PAGE DIAGRAM